UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CRYSTAL V.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:24-cv-00126-GCS |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff argues that the Administrative Law Judge ("ALJ") erred as a matter of law by failing to account for any mental limitations in her Residual Functional Capacity ("RFC") or otherwise explain why such limitations were excluded. (Doc. 14, p. 1). For the reasons stated below, the Court finds that the ALJ erred by excluding Plaintiff's mental limitations from the RFC assessment.

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on September 10, 2019. (Tr. 48). The alleged onset date of her disability was December 5, 2017. *Id.* Her claim was initially denied on February 24, 2020, and upon reconsideration on May 22, 2021. *Id.* A video

---

[1]    Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

hearing was held on February 22, 2022. *Id.* Her claim was denied on March 10, 2022. (Tr. 45). The Appeals Council denied Plaintiff's request for review on November 2, 2023, thus making the ALJ's denial on March 10, 2022, the final agency decision subject to judicial review. (Tr. 16).

The present application for DIB was not Plaintiff's first. On December 4, 2017, an ALJ issued an unfavorable decision on Plaintiff's earlier applications for a period of disability, DIB, and supplemental security income. (Tr. 48, 125). The Appeals Council denied Plaintiff's request for review of that decision on May 25, 2018. (Tr. 48). Then, on November 24, 2020, Plaintiff requested a reopening of the decision "based on new and material evidence that was not available previously" from "Dr. Huesman, Dr. Semple, and others concerning her condition prior to her date of last insured of August 31, 2018." (Tr. 170-171). In his decision denying the present application, the ALJ also found no basis for reopening his previous decision. (Tr. 48).

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1. **Whether the Commissioner erred as a matter of law by failing to account for any mental limitations in the RFC and by failing to expressly explain why such limitations were not included in the RFC:** Plaintiff argues that, despite finding mild mental limitations stemming from the Plaintiff's mental impairments of anxiety and depression in all four of the broad functional areas, the ALJ's RFC analysis did not include such limitations.

(Doc. 14, p. 6, 10).

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a Plaintiff must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine

not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's

findings were supported by substantial evidence and whether any errors of law were

made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme

Court defines substantial evidence as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019)

(internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken

into consideration, but this Court does not reweigh evidence, resolve conflicts, decide

questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester*

*v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not

abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v.*

*Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**THE DECISION OF THE ALJ**

The ALJ followed the five-step analytical framework described above. He

determined that Plaintiff did not engage in substantial gainful activity during the period

from her alleged onset date through her date of last insured. (Tr. 51). He found that

Plaintiff had severe impairments of cervical and lumbar degenerative disc disease, hip

greater trochanteric bursitis, myofascial pain, osteoarthritis, and obesity. *Id*. The ALJ

found that Plaintiff also had the non-severe mental impairments of anxiety and

depression. (Tr. 52). He further determined that Plaintiff's impairments did not meet or

equal a listed impairment. (Tr. 54).

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b), except she could occasionally climb ladders, ropes and scaffolding, stoop, or crawl. (Tr. 54). Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was able to perform past relevant work as a bindery worker. (Tr. 60). The ALJ also found that there were other jobs that existed in significant numbers in the national economy that Plaintiff could also perform. (Tr. 61). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 62).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating its decision. The following summary of the record is directed to the points raised by Plaintiff and is confined to the relevant time period.

### A.    Evidentiary Hearing

During an evidentiary hearing on February 22, 2022, Plaintiff testified that the last time she was employed was from 2012 to 2014, when she worked at a group home as a therapy aide for two years. (Tr. 82-83). Prior to that position, she worked as a bindery worker for five years. (Tr. 83-84). The ALJ asked Plaintiff what she believed kept her from being able to work. (Tr. 84). She explained that her back problems made it difficult for her to bend down and that her anxiety and depression kept her from "going out and doing anything." *Id.*

Next, the ALJ asked Plaintiff to describe her anxiety and depression. (Tr. 85). Plaintiff responded that she had "problems with depression for many years" that began with her ex-husband's controlling behavior. *Id.* She explained that she was prescribed

medications for her anxiety and depression, which were not helpful, and her medical providers were still trying new medications. (Tr. 86). She described her typical day, which involved sleeping in due to difficulties sleeping, sitting in the chair in the living room, attempting to watch television or read—but having difficulties due to inability to concentrate or sit for very long—and then going back to bed after about a half hour of sitting up. *Id.*

Plaintiff was then examined by her attorney. She explained that her condition had worsened since a previous hearing with a different ALJ, despite being treated with numerous medications. (Tr. 88). She had been treated by Thomas Heischmidt, M.D. ("Dr. Heischmidt") since 2002, including for depression and anxiety prior to 2018. (Tr. 88-89). She was also treated for depression and anxiety by other medical providers in Dr. Heischmidt's office, including a Nurse Practitioner Tinsley and Melissa Semple, Psy.D. ("Dr. Semple"). (Tr. 89).[2]

Plaintiff testified that she experienced panic attacks "almost every time" she went out, and she even had difficulty attending the evidentiary hearing. (Tr. 89). She confirmed that she was recently diagnosed with having nightly visions or psychotic activity, which began in 2018. (Tr. 91). She reiterated that she had difficulties concentrating and could read for 15 minutes at a time. *Id.* When asked what made it difficult for her to concentrate,

---

[2]     At the evidentiary hearing, Plaintiff's counsel stated that Dr. Semple was available to testify regarding "her familiarity with [Plaintiff], he[r] diagnoses, her understanding of the symptoms and her opinions as to the functional limits." (Tr. 73). However, the ALJ declined to call Dr. Semple to testify because her written report was submitted into the evidentiary record. (Tr. 73-75).

Plaintiff replied, "[b]ack pain." *Id.*

**B.     Relevant Medical Records**

   *1.     Self-Reported Questionnaire and Letter from Husband*

On January 19, 2020, Plaintiff submitted a self-reported questionnaire regarding her disabilities. (Tr. 265). She reported that her depression, along with her back pain, kept her from seeing her kids, spending time with her husband, and getting out of bed. (Tr. 258). She noted that her difficulties with concentration prevented her from leaving the house alone, shopping for necessities, following written instructions, watching tv, and reading. (Tr. 259-269). She could only pay attention for 3-5 minutes at a time. (Tr. 261). She experienced anxiety attacks due to stress and fear that her children were in danger. (Tr. 264-265).

Plaintiff also submitted into evidence an undated letter from her husband regarding her disabilities. (Tr. 297). Relevant to her mental conditions, Plaintiff's husband noted that she struggled with sleeping due to racing thoughts, complained of "seeing faceless figures and bad dreams," rarely completed chores or showered, and had difficulties with crowds. *Id.*

   *2.     Assessment by Dr. Joseph Mehr*

On January 29, 2020, state agency psychologist Joseph Mehr, Ph.D. ("Dr. Mehr"), found that Plaintiff had no mental, medically determinable impairments. (Tr. 154). Though Plaintiff alleged that she experienced depression, anxiety, and stress, Dr. Mehr found insufficient evidence prior to her date of last insured.  (Tr. 154).

3.      *Questionnaire by Dr. Heischmidt*

Plaintiff submitted a questionnaire by Dr. Heischmidt, dated September 3, 2020.
(Tr. 336-337). Dr. Heischmidt indicated that he had treated Plaintiff every 3 months for
over 10 years. (Tr. 336). Under Plaintiff's severe diagnoses, Dr. Heischmidt listed
"fibromyalgia, chronic low back pain with sciatica, [and] major depression with psychotic
factors." *Id.* He listed her primary symptoms as "pain, depression, [and] unable to
interact with others," and noted that he had prescribed "meds, therapy, eval pain clinic,
[and] counseling." *Id.* He expected Plaintiff would be off task during 80% of a workday
and that she would likely be absent from work 30 out of 30 days per month due to her
impairments. (Tr. 337).  He noted that she was unable to deal with stress. *Id.*

4.      *Questionnaire by Dr. Semple*

Plaintiff also provided a questionnaire by Dr. Semple, dated February 15, 2022.
(Tr. 3777-3778). Dr. Semple stated that she had treated Plaintiff since March of 2020,
having last examined her on February 14, 2022. (Tr. 3777). She noted that Plaintiff was
diagnosed with the following mental impairments which had lasted or were expected to
last 12 months: moderate episode of recurrent major depressive disorder, generalized
anxiety disorder, panic disorder, and bipolar disorder. *Id.* Dr. Semple listed Plaintiff's
symptoms as severe pain, difficulty leaving the house or being in any social situations,
rocking, and difficulty breathing or focusing. *Id.* Dr. Semple prescribed for Plaintiff
cognitive behavioral therapy, dialectical behavioral therapy, and treatment with
psychotropic medication. *Id.* Plaintiff was noted to have up to 20 "bad days" every 28-
day period and was expected to be off task 80-85% of workdays. *Id.* Dr. Semple described

Plaintiff's ability to handle and control her reactions to stress as "very limited," and that Plaintiff spent most of her days in a state of panic. *Id.* Based on these symptoms, Dr. Semple did not believe that Plaintiff could "make it into work at all" and would miss 4 to 5 days per week. (Tr. 3778).

At the bottom of the questionnaire, Dr. Semple noted that she did not begin treating Plaintiff until 2020, but had discussed her prior treatment with Dr. Heischmidt, who Plaintiff first began to see in 2011 for anxiety and depression. (Tr. 3778). Dr. Semple noted that Dr. Heischmidt reported that Plaintiff became overwhelmed by symptoms of anxiety and difficulties leaving the house in 2016. *Id.*

## DISCUSSION

### A.    RFC Analysis

Plaintiff argues that the Commissioner's denial of her application for DIB was in error because the RFC analysis did not discuss Plaintiff's mild mental limitations even though the ALJ previously found that Plaintiff had mild mental limitations stemming from anxiety and depression in all four of the broad functional areas.  (Doc. 14, p. 10). The Commissioner responds that the ALJ reasonably declined to impose restrictions for Plaintiff's non-severe mental impairments, such that Plaintiff's arguments are contrary to the law and needlessly nitpick the ALJ's decision. (Doc. 20, p. 1). The Court agrees with Plaintiff and finds that the ALJ erred by failing to incorporate Plaintiff's mild mental limitations into the RFC or otherwise explain why those mild limitations produced no functional restrictions such that they could be excluded from the RFC.

The ALJ is required to consider the aggregate impacts of all of Plaintiff's

impairments when crafting the RFC. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). *See also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (stating that "[a]s a general rule, . . . the ALJ's RFC assessment must incorporate all of the Plaintiff's limitations supported by the medical record.") (collecting cases). This rule applies even where the mental impairments are non-severe and impose only minor limitations on a Plaintiff's capabilities. *See Thomas G. v. Kijakazi*, No. 20-cv-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022) (collecting cases). This is because "a non-severe impairment may not significantly limit a Plaintiff's ability to work when viewed in isolation, but it can 'be critical to the outcome of a claim' when seen together with other limitations." SSR-96-8p.

The ALJ first evaluated Plaintiff's mental limitations at step two. The ALJ concluded that Plaintiff's medically determinable impairments of anxiety and depression were non-severe. (Tr. 54). When evaluating each area of mental functioning, the ALJ considered Plaintiff's testimony regarding her daily activities, and evaluations by state agency psychologist Dr. Mehr and Plaintiff's treating physician, Dr. Semple. (Tr. 56-58). The ALJ concluded that Plaintiff had mild limitations in each of the four "paragraph B" areas—*i.e.*, (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (Tr. 54). Finally, the ALJ concluded his step two analysis by stating:

> The limitations identified in the paragraph B criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of

Impairments (SSR 96-8p). Therefore, the following residual functional
capacity assessment reflects the degree of limitation the undersigned has
found in the paragraph B mental function analysis.

*Id.*

Based on the above statement, the "mental residual functional capacity assessment

used at steps 4 and 5 of the sequential evaluation process requires a more detailed

assessment" than at Step 2. However, the RFC is devoid of any direct statement

concerning Plaintiff's mental impairments. In fact, it is not clear to what extent, if any, the

ALJ considered Plaintiff's mental impairments when crafting the RFC. On the one hand,

the ALJ observed that Dr. Heischmidt noted in his questionnaire responses from

September 3, 2020, that "[i]f employed, [Plaintiff] would likely be off task for 80% of the

workday" and "added that [Plaintiff] is unable to deal with stress." (Tr. 60). The ALJ also

highlighted Dr. Heischmidt's "blanket assertion" that Plaintiff's "'symptoms and

limitations' date back to 2008." *Id.* The ALJ further stated that, similar to Dr. Semple's

"after-the-fact questionnaire responses," Dr. Heischmidt failed to cite to actual evidence

to support the limitations he articulated, and that "his own treatment record during that

time fails to support these restrictions." *Id.* These vague references to the medical records

discussing Plaintiff's mental impairments starkly contrasts with the ALJ's explicit

discussion of Dr. Heischmidt's treatment of her physical symptoms. *Id.*

To be clear, this Court is not tasked with reevaluating the facts or reweighing the

evidence to determine whether Plaintiff is disabled. *See Stephens v. Berryhill*, 888 F.3d 323,

327 (7th Cir. 2018). Rather, it is this Court's task to determine whether the ALJ built "an

accurate and logical bridge from the evidence to [his] conclusion." *See Spicher v. Berryhill*,

898 F.3d 754, 757 (7th Cir. 2018) (internal citations and quotations omitted. The Court

agrees with Plaintiff that the ALJ failed to do so. After finding that Plaintiff had mild

mental impairments at step 2, the ALJ was required to discuss how or why those

limitations factored—or did not factor—into his RFC assessment. *See, e.g., Thomas G. v.

Kijakazi*, 2022 WL 4234967, at *4 (explaining that "if the ALJ believed that the mild mental

limitations did not merit a non-exertional limitation in the RFC, she was obligated to

explain that conclusion.") (citation omitted). He did not. Thus, he failed to build a logical

bridge. This is reversible error. *See, e.g., Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)

(explaining that "failure to fully consider the impact of non-severe impairments requires

reversal.").

**B.    Questions to VE**

As an additional matter, Plaintiff argues that the ALJ presented a legally

insufficient hypothetical to the vocational expert. (Doc. 14, p. 18). However, there was no

testimony from a VE at Plaintiff's evidentiary hearing in this case. Thus, Plaintiff appears

to be referencing testimony from the evidentiary hearing on August 21, 2017, which

related to her prior application for a period of disability, DIB, and supplemental security

income. (Tr. 97-121). That prior application was denied on December 4, 2017, nearly two

years before she filed the application at issue in this case. (Tr. 48). Therefore, the ALJ's

hypothetical questions to the VE in that application are inapposite to this case. Neither

does Plaintiff otherwise contest the ALJ's decision to deny her request to reopen his

decision regarding her previous application. And, even if the hypothetical questions to

the VE in that application were relevant, the Court need not reach the issue of whether

the ALJ erred in his hypothetical questions to the VE. The Court has already found that the ALJ committed reversible error in determining Plaintiff's RFC, such that Plaintiff will have the opportunity for a new hearing. *See, e.g.*, *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), *amended on reh'g* (Aug. 30, 2018) (stating that "[w]hen a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge.").

### CONCLUSION

For the above-stated reasons, the Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED:  August 1, 2025.**

Digitally signed by
Judge Sison
Date: 2025.08.01
14:16:51 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**